## MOORE vs. LEVERT.

1. By the common law, a tenant of a close is not bound to fence against an adjoining close, unless by force of prescription; and where no prescription or agreement exists, the legal obligation of the tenants of adjoining lands to make and maintain partition· fences, depends entirely upon statutory provisions.

2. Our statute on the subject of partition fences, (Clay's Digest 241 § 4,) does not restrict a tenant's right to let his own lands lie open; he being responsible in damages for his cattle breaking into any grounds which are enclosed with a lawful fence.

3. The fact that some pannels of the defendant's outside fence were down, though not conclusive evidence that his lot was unenclosed, is nevertheless evidence whose weight should be left to the consideration of the jury in ascertaining that fact.

4. If defendant's lot is in possession of a trespasser, or of one claiming title in himself or a third person, defendant is not liable for the erection or repairs of a partition fence; but if he consent, as owner, to the erection of the fence, and it is made by the adjoining proprietor upon the consent thus given, he is estopped from denying his liability.

5. In an action to recover one-half of the expense of a partition fence, the actual interest which the parties have in the fence is a question which cannot arise.

ERROR to the Circuit Court of Madison.

Tried before the Hon. THOMAS A. WALKER.

THIS action (Francis J. Levert v. Benjamin T. Moore) was commenced before a justice of the peace, to recover one half of the cost of a partition fence. Judgment was rendered by the justice in favor of the plaintiff, and the defendant took the case, by appeal, to the Circuit Court. The plaintiff there filed a declaration containing the common counts in *assumpsit*, to which the defendant pleaded the general issue; and judgment was again rendered for the plaintiff, on the verdict of the jury.

On the trial, as the bill of exceptions shows, evidence was introduced tending to show, that defendant was the owner of the lot adjoining plaintiff's lot, and that the partition fence was erected on the line of said lots; that a dwelling house, a kitchen and a smoke house, were on defendant's lot. Evidence was also offered showing that one Thomas Bibb claimed possession of this lot, and was in possession of it, at the time said fence was

erected ; but the character of his possession or claim is not explained by the record. It was proved, that some pannels of the outside fence around this lot were down at the time of the erection of said partition fence, so that stock could enter ; and that, after the erection of said partition fence, most, if not all, of said outside fence fell down, or was taken down, and so continued until the commencement of the suit ; but there was no evidence that defendant disclaimed title to said lot, when served with written notices, or when addressed orally by plantiiff, on the subject of erecting said partition fence. Said Bibb testified, that he was present when plaintiff and defendant had a conversation about said fence, and at the same time defendant took witness and another person to examine and see if said partition fence could not be repaired.                   •

" The defendant's counsel asked the court to charge the jury, that, if they believed from the testimony that the defendant's lot, adjoining the plaintiff's lot, was not enclosed, but open and exposed, at the time of plaintiff's notice to build said fence, and at the time of building the same, then they are bound to find for the defendant. The court gave this charge, but added, the fact that the fence was down in two or three places, over which stock might pass, was not sufficient, alone, to warrant the conclusion that the lot was not occupied, unenclosed, open and exposed ; they must look to all the proof, for the purpose of ascertaining whether the lot was not occupied, unenclosed, open and exposed.

" The defendant's counsel also asked the court to charge, that, if the jury believed from the testimony that said lot was in the possession of said Bibb, at the time of the notice given by plaintiff, and at the time of the building of said fence, then they must find for the defendant. The court gave this charge as asked, but added, if Bibb's possession was a mere naked possession, without any authority or control over the lot, his naked possession would not affect the plaintiff's right.

" Defendant's counsel also asked the court to instruct the jury, that, if they believed that defendant did have possession of said lot, at the time of said notice and the building of said fence, then plaintiff and defendant would be joint tenants, and plaintiff could not maintain this action. This charge the court refused, and the defendant excepted to the refusal,

as also to the explanations or qualifications of the other charges."

These several rulings of the court are now assigned for error.

SAMUEL D. J. MOORE, for plaintiff in error.

C. C. CLAY, JR., *contra* :

1. The defendant below was not entitled to the charge first asked by him and given by the court. It was abstract; for the only testimony offered by him, as to this point, was that, "at the time of the erection of said new partition fence, some pannels of the outside fence around said lot claimed by him were down so that stock might enter." The qualification of the charge was proper, lest the jury might infer from the charge given, that some pannels being down relieved defendant from his obligation to contribute, which was not intended by the Legislature.— Clay's Dig. 241 § 4. A careless, dishonest and litigious neighbor might, at will, avoid his obligation to repair a partition fence, by throwing down, or suffering to fall down, two or three pannels of his own outside fence. The true question was, whether Moore had abandoned his lot to the public.—Clealand v. Walker, 11 Ala. 1066.

2. The defendant below was not entitled to the second charge asked by him and given by the court. The proof shows, that he held himself out to plaintiff as owner of the lot, and as the one to whom he should look for contribution in repairing the division fence, and that plaintiff acted upon his admissions.— Hence, he is estopped from denying that he is responsible for repairs.—1 Greenl. Ev. 249 § 207 ; 19 Ala. 435. Again; Bibb's mere possession of the lot, at the time indicated, did not make him liable for the repairs, which were of a substantial, lasting character. At common law, a tenant from year to year was not bound to make such repairs.—Chit. Cont. 17, n. *b*, and 100, n. *c, d ;* 6 Taunt. 301 ; 1 Marsh. 567. Much less was a tenant at will or sufferance. The statute does not alter the common law in this respect, (see Clay's Dig. 241 § 4,) as supposed from the use of the words "owners or possessors." But, if the charge asked and given was correct, the instructions added were necessary ; for, surely, "a mere naked possession, without authority or control over the lot," did not make him

liable for such repairs, which the jury might have erroneously inferred, without the instructions added.

3. The last charge asked was properly refused. Possession of the lot by defendant did not make him and plaintiff joint tenants as to the division fence. Unity of possession alone made them, perhaps, tenants in common. Unity of title, time and interest, as well as possession, are necessary in joint tenancy. The plaintiff could maintain this action. The statute (Clay's Dig. 241 § 4) says: "the charge of such division fence, so far as enclosed on both sides, shall be equally borne and maintained by both parties." The same statute gives a summary remedy, but does not, expressly or impliedly, negative plaintiff's right to his common law remedy.—Chit. Plead. 163-4. This court recognizes plaintiff's right to his common law remedy in construing this statute in 8 Ala. 495. Anciently, one joint tenant, or tenant in common, had his writ *de reparatione facienda*, against another who would not repair.—Fitz. N. B. 295, 378; 1 Coke, book 2, chap. 26, p. 200 b. Assumpsit has superseded the ancient remedy.—6 Cowen 475; 12 Mass. 70; 9 *ib*. 540; see, also, 3 Kent's Com. 437-8; 4 *ib*. 370-1.

GOLDTHWAITE, J.—The common law doctrine in relation to partition fences, is, that a tenant of a close is not bound to fence against an adjoining close, unless by force of prescription (Churchhill v. Evans, 1 Taunt. 529; 4 Met. 589); and where no prescription or agreement exists, the legal obligation of the tenants of adjoining lands to make and maintain partition fences depends entirely upon statutory provisions. Our statute (Clay's Digest 241 § 4) provides, "that where any neighbors shall improve lands adjacent to each other, or where any person shall enclose any land adjoining another's land already fenced in, so that any part of the first person's fence becomes the partition fence between them, the charge of such division fence, so far as enclosed on both sides, shall be equally borne and maintained by both parties." It was not, however, the intention of the Legislature, to restrict the right of the tenant to let his own land lie open; he being responsible in damages for his cattle breaking into any grounds enclosed with a lawful fence.—Clay's Dig. 241 § 1.

One of the requisites necessary, in order for the plaintiff be-

21

low to maintain his action, was, that the land of the defendant should have been enclosed; and although the fact that some pannels of the outside fence were down, so that stock could enter, might not have been conclusive upon that question, it was nevertheless evidence to be taken into consideration by the jury in ascertaining that fact. The qualification to the first charge was, in this aspect, erroneous, as it asserted the proposition that the fence being down in two or three places was, in itself, no evidence that the lot was not enclosed. This was invading the province of the jury, whose duty it was to determine upon the weight to be attached to evidence of this character.

The qualification to the second charge, also, in our opinion, laid down the law too broadly. Bibb's possession must either have been under a claim of right in himself or a third person, under the defendant, or as a trespasser. Now, if the charge regarded him as a trespasser, which we suppose from the language employed it did, it is very clear that the actual owner could not be made liable for the erection or repairs of the fence; for the reason, that, had he been in possession, he might have left the lot open and exposed. The same reasons would apply, if Bibb was holding under a claim of right in himself or a third person. The record does not show that he held under the defendant, Moore, and we do not, therefore, consider the case in that aspect. If, however, as owner, he consented to the erection or repairs of the fence, and the other party made them upon the consent thus given, it would be a clear case of estoppel *in pais*, and of course he would be liable.

In the refusal to give the last charge there was no error. To entitle the plaintiff to recover, as we have already said, the requisitions of the statute must be pursued, and the actual interest which the parties have in the partition fence, is a question which cannot arise in an action of this nature.

The judgment is reversed, and the cause remanded.